IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

MARY FRANCES PARDEE,

Debtor.

Filed / Docketed
June 2, 2010

Case No. 09-13841-M
Chapter 7

## MEMORANDUM OPINION

A widow. Her deceased husband. A prior ex-wife. Over $600,000 in cash. More than nine years of litigation, including appeals. A state court order ordering the widow to hand over to the ex-wife some $188,000, plus interest. Unsuccessful attempts to set that order aside through appeal. Finally, a bankruptcy filing in which the widow claims that all of the money is hers, regardless of what any state court might think. Those are the main ingredients in the stew presently before the Court. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052, which is made applicable to this contested matter by Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of this bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a). This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A) and (B).

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2010). Unless otherwise noted, all references to "Rules" are to the Federal Rules of Bankruptcy Procedure, as amended, effective December 1, 2009 (West 2010). All other references to federal statutes and rules are also to West 2010 publications.

**Findings of Fact**[2]

Betty Schack Pardee ("Betty") was married to Douglas DeBaun Pardee ("Douglas") in 1968.[3] They divorced on December 6, 1991, pursuant to a final decree filed in the Circuit Court of Roanoke County, Virginia (the "Virginia Consent Decree"). The Virginia Consent Decree incorporated a post-nuptial agreement dated October 2, 1991 (the "Agreement"), wherein Betty and Douglas resolved all matters involving their property rights. The Agreement provided, in part, that Betty was entitled to one-half of Douglas' annuity or retirement plans with his employer, Blue Circle Cement Company ("Blue Circle"). The Agreement was specific in regards to future compliance and provided that each party would execute any document necessary in a timely manner upon request. Betty and Douglas agreed that the law of the Commonwealth of Virginia would govern the Agreement.

Douglas moved to Oklahoma and married Mary Frances Pardee ("Mary" or "Debtor") on December 21, 1991, fifteen days after entry of the Virginia Consent Decree. Douglas retired from Blue Circle on July 15, 2000, and elected to receive his retirement benefits in a lump sum payment. Accordingly, the administrator of the Blue Circle retirement plan paid Douglas $189,397.41 on July

---

[2] The record before the Court is spartan. The parties filed a Joint Stipulation of Facts with Authentication of Documents, *at Docket No. 35*. The Joint Stipulation consists of a compilation of documents from previous state court proceedings, and no other factual stipulation. The facts set out in this section come from the Final Order Sustaining Plaintiff's Motion for Summary Judgment, filed by the District Court in and for Tulsa County, Oklahoma, Case No. CJ-2001-1825, on February 14, 2008, which is one of the documents stipulated for admission by the parties. *See* Final Order Sustaining Plaintiff's Motion for Summary Judgment, filed by the District Court in and for Tulsa County, Case No. CJ-2001-1825, February 14, 2008, *in* Joint Stipulation, Exhibit 1.

[3] The Court ordinarily prefers to use more formal references to parties in interest, however, because Mary Frances, Betty Schack, and Douglas share a common last name, the Court has chosen to use first names to avoid confusion.

27, 2000. The distribution was made to an individual retirement account in Douglas' name (the "Douglas IRA") with Mary as the named beneficiary. Douglas died one day after receipt of the funds. The Virginia Consent Decree notwithstanding, Betty received not one dime.

Upon Douglas' death, Debtor collected the funds from the Douglas IRA and moved them into an individual retirement account in her name (the "Mary IRA"). Initially, Betty made a claim for one-half of the retirement funds with Blue Circle, which it denied. Betty then made a demand upon Debtor for payment of these funds, which Debtor refused. Refusing to take no for an answer, Betty brought an action in the District Court in and for Tulsa County, Oklahoma (the "District Court"), Case No. CJ-2001-1825 (the "State Court Action"), seeking to recover one-half of the retirement funds from either Debtor and/or Douglas' estate.[4] On cross-motions for summary judgment, the District Court ruled in favor of the Debtor, finding that any order regarding distribution of funds to Betty would be in direct violation of federal law, i.e., the Employee Retirement Income Security Act of 1974, as amended by the Retirement Equity Act of 1984 ("ERISA").[5] Betty appealed the decision. In an opinion issued on May 6, 2005, the Oklahoma Court of Civil Appeals reversed the decision of the District Court, ruling that ERISA does not protect pension funds after the beneficiary receives the funds.[6] The State Court Action was remanded to the District Court for further proceedings.

Upon remand, the issues in the State Court Action were: (1) whether or not the parties'

---

[4] The State Court Action named Debtor both personally and in her capacity as the personal representative of Douglas' estate.

[5] *Pardee v. Pardee*, No. CJ-2001-1825, 2003 WL 25827197 (Okla. Dist. March 31, 2003).

[6] *See Pardee v. Pardee*, 112 P.3d 308 (Okla. Civ. App. 2005). The Court takes judicial notice of this opinion and the facts contained therein on its own motion.

Agreement to divide future pension benefits as incorporated in the Virginia Consent Decree was valid and enforceable against Debtor and/or Douglas' estate; and (2) if so, whether a constructive trust in Betty's favor should be imposed over the proceeds deposited in the Mary IRA or other property of Douglas' estate. In an order entered on February 14, 2008 (the "State Court Order"), the District Court answered both questions in the affirmative.[7] The District Court held that "[t]he Agreement to split [Douglas'] future pension was valid and enforceable."[8] Upholding the validity of the Virginia Consent Decree, the District Court found that under both Oklahoma and Virginia law, the Virginia Consent Decree took on the status of a judgment upon the approval of the presiding judge. The District Court also found that: (1) under the Agreement, Douglas intended to make a distribution to Betty of one-half of his pension benefits from Blue Circle; (2) Douglas' failure to distribute those funds to Betty was a breach of their Agreement; (3) Douglas' act of placing all of the funds in the Douglas IRA was wrongful; and (4) Debtor's placing of the funds into the Mary IRA was an act to further deprive Betty of her rightful property under the Agreement. The State Court Order contained the following enforcement provisions:

> IT IS THEREFORE ORDERED by the Court that Plaintiff [Betty]'s Motion for Summary Judgment upholding the validity of the Virginia Consent Decree and imposing upon Defendant [Debtor]'s I.R.A. and/or other property of [Douglas'] Estate, a constructive trust equal to one-half of the Deceased's [Douglas'] retirement benefit or the sum of $94,698.70 is sustained.
>
> IT IS FURTHER ORDERED by the Court that Plaintiff [Betty] is granted judgment in the sum of $94,698.70 plus interest at the legal rate from July 27, 2000 until paid in full.

---

[7] Final Order Sustaining Plaintiff's Motion for Summary Judgment, filed by the District Court in and for Tulsa County, Case No. CJ-2001-1825, February 14, 2008, *in* Joint Stipulation, Exhibit 1.

[8] *Id*. at 3.

4

>   IT IS FURTHER ORDERED by the Court that Defendants' [Debtor, individually and as representative of Douglas' estate] Counter Motion for Summary Judgment filed September 11, 2007 is overruled.
>
>   FOR ALL OF WHICH LET EXECUTION ISSUE.

The State Court Order was never directly appealed.

On March 14, 2008, Betty filed an application in the State Court Action for attorney fees, costs, and pre-judgment interest.[9] Debtor initially sought additional time to respond, but subsequently filed an application with the Oklahoma Supreme Court to assume original jurisdiction and a petition for a writ of prohibition (the "Petition for Writ").[10] Debtor sought to prevent further proceedings in the State Court Action and to prevent enforcement of the State Court Order.[11] Debtor argued that the State Court Order and the previous ruling of the Oklahoma Court of Civil Appeals were preempted and void for lack of jurisdiction because the outcome did not comport with ERISA.[12] The argument appears similar if not identical to the argument previously rejected by the Oklahoma Court of Civil Appeals.[13] The Petition for Writ was denied by the Oklahoma Supreme Court.

After the Petition for Writ was denied, Betty began garnishment proceedings against

---

[9] Plaintiff's Application for Attorney Fees, Costs and Pre-Judgment Interest, Case No. CJ-2001-1825, March 14, 2008, *in* Joint Stipulation, Exhibit 2.

[10] Motion for Additional Time to Respond, Case No. CJ-2001-1825, April 16, 2008, *in* Joint Stipulation, Exhibit 3; Application to Assume Original Jurisdiction and Petition for Writ of Prohibition, Case No.105803, April 25, 2008, *in* Joint Stipulation, Exhibit 4.

[11] *See* Petition for Writ, *in* Joint Stipulation, Exhibit 4. *See also* Motion to Stay Further Proceedings Pending Resolution of Application for Original Jurisdiction and Petition for Writ of Prohibition, Case No. CJ-2001-1825, April 30, 2008, *in* Joint Stipulation, Exhibit 5.

[12] Petition for Writ, *in* Joint Stipulation, Exhibit 4 at 2.

[13] *See Pardee v. Pardee*, 112 P.3d 308 (Okla. Civ. App. 2005).

Prudential Insurance Company of America, Inc. ("Prudential"), the entity that holds Debtor's investment and retirement accounts, including the Mary IRA.[14] Prudential responded that although it was in possession of property belonging to Debtor, it would not release funds pending further order from the court.[15] Betty then sought an order from the District Court directing Prudential to relinquish the requested funds.[16] After a contested hearing on the matter, at which both Betty and Debtor were heard, the District Court ordered Prudential to pay Betty the sum of $188,379.32, or face a citation for contempt.[17]

On December 4, 2009, before Prudential transferred any funds to Betty, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In her schedules, Debtor lists as assets a series of annuities and life insurance held by Prudential, valued in total at $618,533.00. These annuities are described in Debtor's pleadings as being held in the Mary IRA.[18] Debtor claims the Mary IRA as exempt under both Oklahoma and bankruptcy law.[19] Betty is scheduled as a creditor

---

[14] Garnishment Affidavit, Case No. CJ-2001-1825, September 10, 2009, *in* Joint Stipulation, Exhibit 7.

[15] Garnishee's Answer/Affidavit, Case No. CJ-2001-1825, October 2, 2009, *in* Joint Stipulation, Exhibit 8.

[16] Plaintiff's Motion Requesting Court Order Directing Garnishee to Pay Garnishment Proceeds, Case No. CJ-2001-1825, October 21, 2009, *in* Joint Stipulation, Exhibit 10.

[17] Order Directing Garnishee to Pay, Case No. CJ-2001-1825, November 30, 2009, *in* Joint Stipulation, Exhibit 13.

[18] *See, e.g.*, Debtor's Reply to Response to her Motion to Avoid Judicial Lien of Betty Schack Pardee, *at Docket No. 37* at 1 ("The Prudential Annuities and Life Insurance are held by Prudential in Debtor's Individual Retirement Account ("IRA").").

[19] Debtor claims the Mary IRA exempt pursuant to Oklahoma Statutes Annotated tit. 36, § 3631.1, tit. 31, § 1A(20); 29 U.S.C. §§ 1056(d)(1) and 1144; and 11 U.S.C. § 522(b)(3)(C). *See* Amended Schedules B & C, *Docket No. 40.*

holding an unsecured disputed claim in the amount of $188,000.00.[20] On January 13, 2010, Betty filed a proof of claim in the amount of $253,704.19. Betty filed the claim as a secured claim, claiming a lien upon the Mary IRA.[21] Betty also asserts that the funds she claims are being held by the Debtor in constructive trust.

To the extent the "Conclusions of Law" contain items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

The dispute between Betty and Debtor is embodied in two separate contested matters. Debtor has filed a motion to avoid the lien claimed by Betty on the Mary IRA, arguing that any such lien impairs her exemption in those accounts. Betty has filed an objection to the Debtor's claim of exemption in the Mary IRA on the basis that the Mary IRA is held by Debtor subject to the constructive trust recognized in the State Court Order, arguing that funds held in constructive trust do not constitute property of the estate and may not be claimed as exempt.[22] In response, Debtor argues that the State Court Order is a nullity and demands that this Court set it aside. Debtor also seeks a ruling that she be allowed to retain all monies in the Mary IRA free and clear of any claim

---

[20] *Schedule F, Docket No. 11,* at 13.

[21] *Claim No. 1*.

[22] Betty filed her objection to Debtor's claim of exemption on January 7, 2010. *Docket No. 13*. Debtor filed her response on January 25, 2010, the same day that she filed her motion to avoid lien. *Docket Nos. 26 and 27*. After both the objection to exemptions and motion to avoid lien were submitted to the Court, Debtor amended her claim of exemptions with respect to the Mary IRA in order to "incorporate revised descriptions and values" for the items being claimed as exempt," and to add "additional grounds for exemption of" the Mary IRA. *See Docket No. 40*. The amendment to the claim of exemption do not change any of the issues before the Court and do not resolve the dispute between the parties. Accordingly, in the interests of justice and judicial economy, the Court will reach the merits of both contested matters notwithstanding the amendment.

held by Betty.

*Effect of the State Court Order*

In Debtor's motion to avoid lien, she asserts that 1) the State Court Order was interlocutory and not appealable, and therefore not final; and 2) the District Court lacked subject matter jurisdiction to impose a constructive trust on the Mary IRA, rendering the State Court Order void ab initio.[23] Debtor raises similar arguments in response to Betty's objection to Debtor's claim of exemption. Betty argues that under Oklahoma law, the State Court Order is a final judgment on the merits of the legal dispute between these parties, and that this Court may not review the merits of the State Court Order under a doctrine known as the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is named after the two United States Supreme Court cases from which it arose.[24] The United States Court of Appeals for the Tenth Circuit has summarized the doctrine as follows:

> Under 28 U.S.C. § 1257, "federal review of state court judgments can be obtained only in the United States Supreme Court." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998) (citing *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). As a result, the *Rooker-Feldman* doctrine prohibits a lower federal court from considering claims actually decided by a state court, *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and claims "inextricably intertwined" with a prior state-court judgment. *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. In other words, *Rooker-Feldman* precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06, 114 S.Ct.

---

[23] *See* Motion to Avoid Judicial Lien of Betty Schack Pardee, *at Docket No. 26*.

[24] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman,* 460 U.S. 462 (1983).

2647, 129 L.Ed.2d 775 (1994).[25]

Pursuant to the *Rooker-Feldman* doctrine, "'lower federal courts possess no power whatever to sit in direct review of state court decisions.'"[26] The United States Court of Appeals for the Seventh Circuit described it this way:

> The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.[27]

The *Rooker-Feldman* doctrine is applicable "to *all* state-court judgments, including those of intermediate state courts,"[28] but "only to suits filed after state proceedings are final."[29] Debtor asks this Court to set aside the operative provisions of the State Court Order on the grounds that it was entered without jurisdiction and/or is incorrect on the merits. Under *Rooker-Feldman*, to the extent the State Court Order is a final order on the merits, this Court lacks jurisdiction to exercise appellate review of that ruling.

The finality of a state court order is determined by the law of that state. The definition of

---

[25] *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

[26] *Id.* at 474–75 (quoting *Feldman*, 460 U.S. at 483 n.16).

[27] *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993); *see also Smith v. Cowden (In re Cowden)*, 337 B.R. 512, 540 (Bankr. W.D. Pa. 2006) (citing *GASH*).

[28] *Kenmen Eng'g*, 314 F.3d at 473.

[29] *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006).

a final order is set out in Oklahoma Statutes Annotated tit. 12, § 953.[30] "An order is a final order when it determines and affects a substantial right."[31] An appealable order must also comply in form with Oklahoma Statutes Annotated tit. 12, § 696.3.[32] The fact that an order does not provide for

---

[30] Section 953 provides:

An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

Okla. Stat. Ann. tit. 12, § 953 (West 2000).

[31] *Woods Petroleum Corp. v. Sledge,* 632 P.2d 393, 396 (Okla. 1981).

[32] Section 696.3 provides:

A. Judgments, decrees and appealable orders that are filed with the clerk of the court shall contain:

> 1. A caption setting forth the name of the court, the names and designation of the parties, the file number of the case and the title of the instrument;
>
> 2. A statement of the disposition of the action, proceeding or motion, including a statement of the relief awarded to a party or parties and the liabilities and obligations imposed on the other party or parties, including the amount of any prejudgment interest;
>
> 3. The signature and title of the court; and
>
> 4. Any other matter approved by the court.

B. Judgments, decrees and appealable orders that are filed with the clerk of the court may contain a statement of costs, attorney fees and interest other than prejudgment interest, or any of them, if they have been determined prior to the time the judgment, decree or appealable order is signed by the court in accordance with this section.

C. The clerk shall endorse on the judgment, decree or appealable order the date it was filed and the name and title of the clerk.

D. A file-stamped copy of the judgment, decree, or appealable order shall be served upon all parties, including those parties who are in default for failure to appear in the action, as

costs or attorney fees does not affect its finality.[33]

While Debtor asserts that the State Court Order is not final, she provides this Court with no basis to support her position.[34] The State Court Order meets all of the procedural requirements for a final order under Oklahoma law. It contains a caption stating that the action took place in the District Court in and for Tulsa County, Oklahoma. It includes the names and designation of the parties, the case number, and is designated as a "<u>Final</u> <u>Order</u> Sustaining Plaintiff's Motion for Summary Judgment."[35] It is signed by Judge Thornbrough in his capacity as a judge of the District Court. The State Court Order is endorsed by the clerk of the District Court with her name, title, and the date the order was filed, and is accompanied by a certificate of service indicating that a true and correct copy of the State Court Order was mailed to counsel of record for both parties on the same day that it was filed with the court clerk.[36]

The State Court Order is also a final order as a matter of substance. It addresses both of the pending summary judgment motions, imposes a constructive trust on the Debtor's IRA (known in this litigation as the Mary IRA), and contains a personal judgment against Debtor. The State Court Order disposed of all matters between the parties, leaving nothing for the court to do in order to

---

provided in Section 696.2 of this title.

Okla. Stat. Ann. tit. 12, § 696.3 (West 2000 & Supp. 2010).

[33] *See* Okla. Stat. Ann. tit. 12, § 696.4 (West 2000 & Supp. 2010).

[34] *See* Debtor's Response to Betty Schack Pardee's Objection to Claim of Exemption, *at Docket No. 27* at 1; Motion to Avoid Judicial Lien of Betty Schack Pardee, *at Docket No. 26* at 2.

[35] *See* State Court Order, *in* Joint Stipulation, Exhibit 1 (emphasis added).

[36] *Id.* at 7 (the pages of the exhibit are not all consecutively numbered; the certificate of service immediately follows page 6).

determine the rights between these parties.[37] The State Court Order meets the requirements of a final appealable order under Oklahoma law. Because the State Court Order is final, this Court is prohibited by the *Rooker-Feldman* doctrine from exercising appellate review of that order. Any complaint by Debtor that the Oklahoma courts did not have jurisdiction to rule on the subject matter of the order, or that it was otherwise wrongly decided, must be raised exclusively under Oklahoma appellate procedures.[38]

*The Nature of Betty's Interest in the Mary IRA*

The determination of what property is property of a bankruptcy estate is determined by reference to state law.[39] The effect of the State Court Order was to 1) recognize the validity of the Agreement between Betty and Douglas to split his retirement benefits; 2) impose a constructive trust on the Mary IRA based on Debtor's wrongful receipt of funds that rightfully belonged to Betty; and 3) grant a personal judgment plus interest against Debtor and/or Douglas' estate for the amounts wrongfully withheld.[40] The question is how, if at all, these rights are affected by the filing of Debtor's bankruptcy case.

Debtor contends that imposition of the constructive trust is "in support of a money judgment," and is the equivalent of an equitable lien and/or a judicial lien, which may be avoided

---

[37] *See Brooks v. J.R. Watkins Med. Co.*, 196 P. 956 (Okla. 1921).

[38] Debtor has already been afforded appellate review of one of the issues complained of herein: namely, that ERISA precludes the imposition of a constructive trust upon the Mary IRA. Unfortunately for Debtor, the appellate court ruled against her. *See Pardee v. Pardee*, 112 P.3d 308 (Okla. Civ. App. 2005). The fact that Debtor lost on appeal does not render the review any less meaningful.

[39] *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007); *In re McClain*, 516 F.3d 301, 312 (5th Cir. 2008).

[40] State Court Order, *in* Joint Stipulation, Exhibit 1, at 6.

under § 522(f).[41] Betty responds that the constructive trust is not "in support of," but in *addition to* the money judgment. Betty argues that the constructive trust recognized that she holds equitable title to funds held in the Mary IRA; in other words, Betty contends that she is not a lien-holder, but is the beneficial owner of the funds, and her interest is not subject to avoidance under the Bankruptcy Code.

> The Supreme Court of Oklahoma has described the purpose of a constructive trust as follows:
>
> [t]he primary reason for imposing a constructive trust is to avoid unjust enrichment. A constructive trust is an involuntary or implied trust by operation of law. It is imposed against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. One obtaining legal title to property by fraud or by violation of a confidence or fiduciary relationship, or in any unconscionable manner, can not equitably retain title.[42]

With regard to the mechanics of a constructive trust, the Supreme Court of Oklahoma has stated that

> [i]f one obtains the legal title to property by fraud or by violation of confidence or fiduciary relationship, or in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. *McCaleb v. McKinley*, [194 P. 105]. In *Rollow v. Taylor*, 104 Okl. 275, 231 P. 224, the court said:
>
>> "'Constructive trusts' are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it."[43]

---

[41] Debtor's Reply to Response to Her Motion to Avoid Judicial Lien of Betty Schack Pardee, *at Docket No. 37* at 3–6.

[42] *Cacy v. Cacy*, 619 P.2d 200, 202 (Okla. 1980) (footnotes omitted).

[43] *Powell v. Chastain*, 318 P.2d 859, 862 (Okla. 1957). *See also In re Seneca Oil Co.*, 906 F.2d 1445, 1450–51 (10th Cir. 1990).

"It is the dual title—the splitting of title into legal and equitable components—that creates the constructive trust."[44] A constructive trust and an equitable lien are alternate—and distinct—remedies available to litigants.[45] The imposition of a constructive trust does not create a lien right in the beneficiary. A constructive trust imposes an equitable duty to convey specific property to another.[46] An equitable lien, by contrast, does not give the beneficiary an ownership right in property, but instead gives them a security interest that attaches to specific property.[47] In order to impose a constructive trust, a court must identify the specific property that is subject to the trust.[48]

Debtor argues that the imposition of a constructive trust by the District Court is a judicial lien that is subject to avoidance under § 522(f). She does so by confusing a constructive trust with an equitable lien. In the State Court Order, the District Court recognized that one-half of the funds

---

[44] *Nichols v. Nichols*, 222 P.3d 1049, 1054–55 (Okla. 2009).

[45] *See* Restatement (First) of Restitution § 161 cmt. a (1937) ("From the perspective of the beneficiary, if the property at issue falls in value, an equitable lien is the preferable remedy; if it rises in value, a constructive trust is the better remedy.").

[46] *See id.* § 160 cmt. c.

[47] *Id.* § 161 cmt. b. *See also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002):

> In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.

(citations omitted) (emphasis in original).

[48] *See In re Seneca Oil Co.*, 906 F.2d 1445, 1450 (10th Cir. 1990).

received by Douglas from his employer rightfully belonged to Betty. In other words, the District Court concluded that Betty held an equitable interest in Douglas' retirement benefits at the moment he received them, and that his withholding of that money from Betty was wrongful. In order to prevent the unjust enrichment of Douglas, his estate, or his heirs, i.e., Debtor, the court imposed a constructive trust on the Mary IRA in the sum of $94,698.70, as of the date the funds were first distributed from Blue Circle to Douglas.[49] Betty is the equitable owner of those funds from and after that date. While Debtor is the owner of record of the Mary IRA, she holds bare legal title to the funds held in trust for Betty.

It is well established by both statute and case law that when an individual seeks bankruptcy relief, property held by that individual in constructive trust for the benefit of another is not property of the bankruptcy estate.[50] Section 541(d) of the Bankruptcy Code provides:

> (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.*[51]

"The bankruptcy estate expressly does not include any equitable interest in 'property in which the debtor holds, as of the commencement of the case, only legal title.'"[52] To the extent that Betty holds

---

[49] *See id.* at 1453 ("[T]he effective date of the constructive trust is the date the wrongful act occurred.").

[50] *Hill v. Kinzler (In re Foster)*, 275 F.3d 924 (10th Cir. 2001); *Nichols v. Nichols*, 222 P.3d 1049, 1056 n.23 (Okla. 2009).

[51] § 541(d) (emphasis added).

[52] *In re Seneca Oil Co.*, 906 F.2d at 1453 (quoting § 541(d)).

equitable title to the Mary IRA, that property is not part of Debtor's bankruptcy estate.

The District Court specifically identified the property subject to the constructive trust as the "Defendant [Debtor]'s I.R.A.," which the parties have identified as the Mary IRA. The State Court Order was a final determination of both Debtor's and Betty's rights in the Mary IRA. Debtor now argues that the Mary IRA consists of several distinct sub-accounts, not all of which were funded from Douglas' pension distribution, and which are therefore not subject to the constructive trust.[53] Parsing out exactly which sub-account from which to draw funds to transfer to Betty may be necessary for Prudential to facilitate the transfer, but it is not a substantive legal matter and does not affect the finality of the State Court Order. The District Court has begun proceedings to clarify the sub-accounts at issue in order to give Prudential some guidance in how to facilitate the necessary transfer of legal title to the funds to Betty. In the interests of comity and judicial economy, this Court will grant relief from the automatic stay to the extent necessary to allow the parties to return to the District Court to complete this process. The District Court is granted leave to enter whatever orders it deems necessary to effectuate the return of legal title in the subject property to Betty.

*Lien Avoidance*

Section 522(f)(1)(A) provides in relevant part:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, . . ."[54]

---

[53] Debtor's Reply to Response to her Motion to Avoid Judicial Lien of Betty Schack Pardee, *at Docket 37* at 3.

[54] § 522(f)(1)(A).

16

Debtor goes to great lengths to argue that the State Court Order should be interpreted as a judicial lien that is avoidable under § 522(f)(1)(A). To the extent that Debtor holds an interest in the funds held in constructive trust for Betty, she holds only bare legal title to those funds. The effect of the constructive trust imposed by the District Court is that Betty's interest in the Mary IRA "fixed" on those funds when they were received by Douglas before Debtor had any interest in the funds. Therefore, to the extent Betty's interest is construed as a lien on the funds in the Mary IRA, her interest falls under the rule in *Farry v. Sanderfoot*,[55] and cannot be avoided because Debtor held no interest in the property before Betty's interest attached.

In addition to the imposition of a constructive trust on the Mary IRA, the District Court also granted a personal judgment against Debtor, including interest. This Court was presented with no evidence or argument that Betty's interest in this judgment has attached to any specific piece of property held by Debtor, including the Mary IRA. To the extent Betty holds a personal judgment against Debtor as a result of the State Court Order that has not attached to specific property, that is a general unsecured debt and is reflected in the proof of claim filed by Betty. The purpose of the personal judgment appears to be to facilitate the transfer of legal title of the funds held by Debtor in the Mary IRA. To the extent a recovery under both a constructive trust and the personal judgment would result in a double recovery to Betty, that can be sorted out by the trustee under any distribution to creditors. Under the present set of facts, the Court simply does not find any lien on property of Debtor or her estate to avoid in this case. Debtor's motion must be denied.

---

[55] *Farrey v. Sanderfoot*, 500 U.S. 291, 296, 301 (1991) ("We hold that § 522(f)(1) [now designated § 522(f)(1)(A)] of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest.").

*The Claim of Exemption*

Debtor separates the Mary IRA into its component sub-accounts and makes a broad claim of exemption under Oklahoma and/or bankruptcy law. Debtor labors under the impression that an exemption claim can thwart the effect of the State Court Order and the corresponding transfer of the subject funds to Betty. Betty, on the other hand, does not contest Debtor's ability to claim an exemption in the Mary IRA *to the extent it is property of Debtor's estate*. To the extent that the Mary IRA is subject to a constructive trust, Betty argues that it is not part of Debtor's estate, and therefore not subject to exemption.

Section 522(b) of the Bankruptcy Code governs what property a debtor may exempt from the bankruptcy estate. The statute provides individual debtors with an option to choose (1) the exemptions set out in § 522(d), or (2) exemptions provided under the law of the state in which the debtor resides.[56] A state is allowed to "opt-out" of the federal exemption scheme under §522(d), and limit its residents to the second option. Oklahoma has opted-out, limiting Debtor to the exemptions found in state law (and federal non-bankruptcy law).[57] The Court assumes without deciding that the funds of the type in the Mary IRA would be exempt under both Oklahoma law and the United States Bankruptcy Code.[58]

---

[56] § 522(b)(1). *See also Owen v. Owen*, 500 U.S. 305, 308 (1991).

[57] Okla. Stat. Ann. tit. 31, § 1(B) (West 2010).

[58] *See* Okla. Stat. Ann. tit. 36, § 3631.1(A); tit. 31, § 1(A)(20). In addition to her state law exemptions, Debtor is entitled to additional exemptions under § 522(b)(3)(C). That section provides that, notwithstanding state law, a debtor may exempt "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." § 522(b)(3)(C). *See also In re Malsch*, 400 B.R. 584, 592 (Bankr. N.D. Ohio 2008); *In re DeThample*, 390 B.R. 716, 725–26 (Bankr. D. Kan. 2008).

Under Bankruptcy Rule 4003, an objecting party has the burden of proving that an exemption is not properly claimed.[59] "If the objecting party can produce evidence to rebut the exemption, the burden then shifts back to the debtor to come forward with evidence to demonstrate that the exemption is proper."[60] Betty does not challenge that the Mary IRA would qualify for exemption under either the state or federal statutes. Betty's position is that, to the extent funds in the Mary IRA, or any sub-accounts, are subject to the constructive trust imposed by the State Court Order, they are not part of Debtor's estate in the first instance, and thus not capable of being deemed exempt. The Court agrees.

As discussed *supra*, property held in constructive trust for the benefit of another is not property of the bankruptcy estate. As the United States Supreme Court stated in *Owen v. Owen*,

> An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions. An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor. Section 522 determines what property a debtor may exempt.
>
> * * *
>
> Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house-if, for example, the house is subject to a purchase-money mortgage for its full value-then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, § 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and

---

[59] Fed. R. Bankr. P. 4003(c).

[60] *In re Gregory*, 245 B.R. 171, 174 (10th Cir. BAP 2000), *aff'd*, 246 F.3d 681 (10th Cir. 2000).

> can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), codified in § 522. Only where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor.[61]

This case presents the exact situation described by the Court in *Owen*. Debtor here holds bare legal title to the Mary IRA to the extent of Betty's constructive trust in the funds. While Debtor may claim an exemption in the Mary IRA from her general unsecured creditors, her exemption claim simply has no effect on Betty's interest in that account as defined in the State Court Order. To the extent that Betty holds equitable title to the Mary IRA, it is not part of Debtor's estate, and Debtor's exemption claim is of no effect as to Betty's interest in the underlying funds.

## Conclusion

Debtor's Motion to Avoid Judicial Lien of Betty Schack Pardee is denied. To the extent Debtor contends that her claim of exemption in the Mary IRA interferes with or supercedes Betty's interest in the Mary IRA, the argument is rejected and the objection to exemption is sustained. Betty is granted leave to return to the District Court for proceedings consistent with this Memorandum Opinion to determine the boundaries of the constructive trust, and facilitate the transfer of legal title of the property to Betty.

Dated this 2nd day of June, 2010.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5831.9

---

[61] *Owen v. Owen*, 500 U.S. 305, 308–09 (1991) (emphasis in original).